# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

AGTIN, INC.,

       Plaintiff,

vs.                                                     Civ. No. 98-1284 WWD/LFG

FRANK GETMAN and CLARENCE GETMAN,
individually, and d/b/a "VOLCANIC,"
"VOLCANIC STONE," and
"VOLCANIC STONE COMPANY,"

       Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING PARTIAL SUMMARY JUDGMENT

THIS MATTER comes before the Court upon Defendants' Motion for Partial Summary Judgment and Dismissal, filed June 18, 1999 **[docket # 48]**. Plaintiff and Defendants are parties to a joint mining adventure. Under an agreement entered into by the parties on September 23, 1997, Agtin, through Anthony Grcich, Agtin's President, obtained the right to conduct exploration, development and mining operations on certain unpatented lode mining claims in Catron County, New Mexico which were owned by Defendants. It is this agreement which gives rise to the underlying controversy alleged in Plaintiff's complaint.

Defendants seek summary judgment on Count I (Breach of Contract) and Count III

(Fraud).[1] Their argument for dismissal is based on two theories: first, that Plaintiff is attempting to create nonexistent disputes of fact by relying on alleged oral representations which under New Mexico's parol evidence rule and statute of frauds, cannot be used to alter the written agreement of the parties; and second, that modifications or amendments made to the initial agreement have settled whatever claims Plaintiff may have against them. Defendants contend that these claims were included in the complaint for the sole purpose of establishing a sufficient amount in controversy to satisfy requirements for federal jurisdiction under 28 U.S.C. § 1332. On this basis, Defendants urge the Court to dismiss Plaintiff's remaining claims to a state forum. Defendants also seek dismissal of two of the Defendants, contending that they were not parties to the mining agreement.

## BACKGROUND

Under Counts I and III, Agtin alleges that Defendants failed to properly complete and install an operational mill for the mining operation, failed to provide promised expertise and resources, gave advice on purchasing equipment which turned out to be either inappropriate or of poor quality, failed to return property belonging to Agtin, and misrepresented the economic feasibility of the commercial production of tin (i.e., misrepresented tin content and price).[2]

Plaintiff contends that at the time of the Agreement and thereafter, Defendants (both

---

[1] Other counts for conversion and injunctive relief are alleged but not relevant here.

[2] I note that this last allegation is not included either in the complaint or in the Initial Pretrial Report, but makes its first appearance in Plaintiff's response to summary judgment. However, it appears that Defendants are aware that the allegation had been made previously at various times. See, e.g., Defts' Undisp. Fact ¶ 29. The issue also comes up in a letter to one of the Defendants dated April 1, 1998, six months before the complaint was filed. See Getman Aff., Ex. E. For this reason, I do not determine here whether the allegation should be dismissed as an untimely "eleventh hour allegation," as suggested by Defendants in their reply.

Frank and Clarence Getman) represented that they could get the mill up and running, first by October 1997, and then by spring 1998. Based on these and other representations made, Agtin maintains that it continued to outlay well over the $200,000.00 original budget estimate and continued development efforts well over the six month Test Period as provided for in the September 23rd agreement ("Agreement"). Compl., Ex. A, ¶ 5.1. At some point when it became clear that the mill would not become operational any time soon, despite efforts to sustain the operations, Grcich found it necessary to close down the mine in August 1998, after eleven months of work and after having expended over $600,000.00. Pltff. Ex. 1, ¶¶ 8, 9.

The Agreement was amended twice by the parties. In October 1997, based on complaints by Grcich to Frank Getman that Agtin was exceeding its original $200,000.00 start-up estimate, Getman agreed that Agtin would first be reimbursed all of its money expended before any royalty payments were made. F. Getman Aff., ¶ D. The second modification was made in April 1998, upon further complaint by Grcich, who was this time alleging that Frank Getman had made several false representations about the cost and economic feasibility of mining the tin as well as the price of tin. This modification reduced the purchase price of the mining claims from five million dollars to two million dollars. While he agreed to the modifications, Frank Getman denies that he took responsibility for Plaintiff's excess expenditures and denies any allegations of misstatement or misrepresentation.

Grcich also entered into a separate Equipment Rental Agreement with Clarence Getman, also on September 23, 1997. In response to Grcich's complaints about the rented equipment not being installed and operating to his satisfaction, that agreement was modified in December 1997 by reducing the last payment for equipment rental from $20,000.00 to $18,000.00. C. Getman

Aff., Ex. A.

**DISCUSSION**

*Legal Standard*

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Butler v. City of Prairie City, Kan., 172 F.3d 736, 744 (10th Cir. 1999) (citation omitted); Fed.R.Civ.P. 56(c). When applying this standard, I examine the factual record and reasonable inferences therefrom in the light most favorable to the Plaintiff as the party in this case opposing summary judgment. See Id.[3]

*Application of Legal Standards to Facts*

The parties do not dispute the above facts concerning the September 23rd Agreement or its modifications. What is in dispute, however, is the effect of the alleged representations, if any, on any of the agreements between the parties. Defendants are technically correct that Agtin's claims -- expressed in terms of the timing and economic feasibility of mill operations, promised expert resources and tin prices -- are not embedded within the text of the Agreement as representations or warranties. Plaintiff does not dispute this, alleging that the representations made were oral.

---

[3] Parties do not dispute that New Mexico law applies, which is consistent with a result under the traditional conflict of laws approach. See Tucker v. R.A Hanson Co., Inc., 956 F.2d 215, 217 (10th Cir. 1992) (New Mexico courts normally look to the place of contracting for the applicable law when considering the meaning and validity of contracts.)

Nevertheless, the pivotal questions for summary judgment purposes are whether these representations were made; if they were, whether they can be considered; and if they can be considered, whether they raise disputed material facts precluding summary judgment. Viewing the record and inferences most favorably to the Plaintiff, I find that there exists sufficient factual dispute over whether these representations were made so as to examine the remaining questions. See e.g., C. Getman Aff., Ex. C at 2.

*Application of Parol Evidence / Statute of Frauds to Plaintiff's Claims*

Defendants contend that any allegations of oral misrepresentations are simply efforts on the part of Plaintiff to further modify the parties' agreements on the basis of disputed evidence that is inadmissible under the parole evidence rule and statute of frauds. I agree that the evidence is disputed (thereby supporting a denial of Defendants' summary judgment motion), but find that it should be considered.

The representations concerning the timing and economic feasibility of the mill operations, expertise allegedly promised by Defendants, and tin content and price, constitute admittedly extrinsic evidence which is barred by the parole evidence rule if "offered to contradict or vary the terms of a complete, integrated, written agreement." Wilburn v. Stewart, 110 N.M. 268, 794 P.2d 1197 (1990); cmp., e.g., Baum v. Great Western Cities Inc. of New Mexico, 703 F.2d 1197, 1205 (10th Cir. 1983) (finding that alleged oral promises were inadmissible where plaintiffs used them to add new terms to the agreement). I do not find that to be its purpose here. As a means of clarifying the circumstances behind the two parties getting together to do business and to determine the purpose of the agreements between them, such evidence can be considered. See Mark V, Inc. v. Mellekas, 114 N.M. 778, 781 (1993).

5

Moreover, extrinsic evidence can be used to resolve ambiguity in a contract. Padilla v. RRA, Inc., 124 N.M. 111 (Ct. App. 1997). The language of several provisions in both the September 23rd Agreement and the subsequent amendments leaves unclear the purpose and intent of the parties entering into these agreements. See Compl., Ex. A; F. Getman Aff., Exs. D & E. For example, ¶ 5.1 in the Agreement setting out a $200,000.00 expenditure limit ("Agtin shall fund such sums as are required, not to exceed [$200,000.00] to set up a test plant. . . ) and a six-month time period ("The Test Period shall not exceed six (6) months.") is fundamental as a premise underlying Plaintiff's allegations in Counts I and III but is subject to different reasonable constructions. Plaintiff views the provision as setting out limits he was induced to exceed in reliance on certain of Defendants' misrepresentations; Defendants on the other hand see it as nothing more than a working objective for Plaintiff which was unattached to any obligation or consideration on their part.

Similarly, the alleged representations need to be considered in order to make factual determinations related to conflicting inferences in the handwritten amendments to the Agreement. See C.R. Anthony Co. v. Loretto Mall Partners, 112 N.M. 504, 509 (1991). Contrary to Defendants' position, it is not "plain and unambiguous" that the delay in royalty payments agreed to by the parties in October 1997 was intended to remedy past, current and *any* future excess expenditures in time or money by Agtin. F. Getman Aff., Ex. C. Also, because the representations themselves present disputes of fact, it is unclear whether the April 1, 1998 modification reducing the purchase price of the mining claims from five million dollars to two million dollars is "legally inconsequential for a failure of consideration" as Defendants would argue. Mem. at 14. Therefore, evidence of alleged misrepresentations made by Defendants are

6

not barred by the parol evidence rule.[4]  See Mark V, Inc., 114 N.M. at 781 (in order to determine the meaning of the ambiguous terms, fact finder may consider extrinsic evidence of the language and conduct of the parties and the circumstances surrounding the agreement, as well as oral evidence of the parties' intent).

*Doctrine of Accord and Satisfaction*

Defendants argue that the modifications agreed to by the parties amount to a complete settlement of all of Plaintiff's claims against them under the doctrine of accord and satisfaction. The settlement of a cause of action by accord and satisfaction means substituting agreement for the cause of action and performing the substituted agreement.  Bennett v. Kisluk, 112 N.M. 221, 223 (1991).  Ordinarily, a settlement agreement is an executory accord which bars further proceedings on the claim, assuming that each party fulfills the accord.  See Trujillo v. Colorado, 649 F.2d 823, 826-27 (10th Cir. 1981).

Plaintiff contends that the October 1997 and April 1998 modifications were made on the basis of target operational dates for the mill offered by Defendants, none of which materialized. Agtin maintains that the amendments do not remedy his disputes with Defendants because their misstatements or misrepresentations continued past the time the parties modified the Agreement. Defendants' reliance on the plain language in the amendments is not dispositive given the unresolved issue of alleged misrepresentations, as I have discussed above.  Despite the fact that

---

[4]  I need not separately discuss Defendants' alternate argument under Statute of Frauds, since Plaintiff is alleging reliance on oral representations.  See Medina v. Sunstate Realty, Inc., 119 N.M. 136, 139 (1995)(citing Restat.(Second) of Contracts, § 150 (1979) (stating that oral modification to written agreement may be enforced despite the Statute of Frauds if one party changes position in reliance on oral agreement).

7

any ambiguities in these agreements are to be construed against Plaintiff as drafter of both the Agreement and the modifications, RTC v. Ocotillo W. Joint Venture, 840 F.Supp. 1463, 1482 (D.N.M. 1993), the ultimate questions of construction cannot be answered until the factual disputes surrounding the alleged representations or misstatements by Defendants are resolved. The Court would otherwise be embracing the notion that Defendants acceded to a considerable delay in receiving royalties on mine profits, and suffered a three million dollar loss in the purchase price for their claims motivated by sheer largesse toward Plaintiff. See Aff. of Frank Getman, ¶ 11. Accordingly, the issues of material fact which exist regarding the construction of the agreements warrant the case proceeding to trial. See Mark V, Inc., 114 N.M. at 781 (citing Anthony, 112 N.M. at 510 n. 5) (factual issues presented by an ambiguity must be resolved by fact finder with benefit of a full evidentiary hearing prior to deciding breach and damages).

*Defendants' Other Arguments*

I need not consider the merits of Defendants' request to dismiss the case for lack of federal diversity jurisdiction, since this argument relies on a dismissal of Counts I and III as a spurious base for amount in controversy and I am not dismissing these counts as a matter of law.

I am also not dismissing any parties to this action. Defendants urge the Court to dismiss Clarence Getman and Volcanic Stone since the allegations in the complaint refer to provisions in the September 23rd Agreement, which, they contend, involves only Frank Getman and Anthony Grcich. The Agreement contains certain handwritten changes to reflect that sole ownership of the mining claims passed through quitclaim deed on the same day the Agreement was executed, to "Frank E.Getman (hereinafter referred to as "VOLCANIC") . . . ." See Compl., Ex. A at 1. Subsequent to that, however, Clarence Getman still identified himself as "owner of the company

8

named Volcanic Stone. . . ."

I do not find as a matter of law that Volcanic and Clarence Getman are not liable under any contractual obligations to Plaintiff. The complaint alludes to contractual breach based on equipment which turned out to be "inappropriate or of poor quality" which would appear to involve the business between Grcich and Clarence Getman. Compl., ¶ 16. Also, on March 18, 1998, Grcich faxed Clarence a lengthy letter from his lawyer's office referring to misrepresentations that had been made, and referring to the situation as being "a family matter between Frank and Volcanic." C. Getman Aff., Ex. C. It is not clear whether or not Plaintiff may look to either Clarence Getman or Volcanic to perform any of the duties under the Agreement, notwithstanding the quitclaim deed. This matter will also proceed to trial.[5]

## CONCLUSION

In sum, Defendants' motion for partial summary judgment is denied **[docket # 48]**. Plaintiff's claims under Counts I and III are not barred as a matter of law under any of the theories posited by Defendants. Genuine issues of material fact exist concerning alleged misrepresentations by Defendants which may have an effect on the construction of the parties' agreements and leave unresolved the factual questions of breach of contract and fraud, and which therefore preclude summary judgment.

None of the Defendants are dismissed at this time as a matter of law.

---

[5] Defendants offer an "alternative means of disposing of Count III" by contending that fraud was not alleged with sufficient particularity under Fed.R.Civ.P. 9(b). Mem. at 16, n.8. Inasmuch as Defendants have chosen to oppose a party's pleading at this point in time in a mere footnote rather than in motions under Fed.R.Civ.P. 12(b), 12(f) or 12(e), the issue can be summarily disposed of. The purpose of Rule 9(b) is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." Farlow v. Peat, Marwick, Mitchell & Co., 956 F.2d 982, 987 (10th Cir.1992). I find that Count III does this sufficiently.

**IT IS SO ORDERED.**

_____
UNITED STATES MAGISTRATE JUDGE